**LAW OFFICE OF STEWART KATZ**
STEWART KATZ, State Bar #127425
555 University Avenue, Suite 270
Sacramento, CA  95825
Telephone: (916) 444-5678

Attorney for Plaintiff SAGE D. KAVENY

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAGE D. KAVENY | NO. |
| Plaintiff, | |
| vs. | **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS** |
| COUNTY OF SACRAMENTO; MATTHEW CHESTERMAN; BRIAN SHORTZ; BRANDON GAYMAN; SHELLY HODGKINS; DOUGLAS DAVIS; THOMAS ANDRIS and DOES 1 through 30, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Plaintiff SAGE D. KAVENY complains and alleges as follows:

## I. JURISDICTION

1.     This Complaint seeks, inter alia, damages pursuant to Title 42 U.S.C. sections 1983 and 1988 for violation of Plaintiff's civil rights. Jurisdiction is founded upon Title 28 U.S.C. sections 1331 and 1343.  This Court also has supplemental jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. section 1367.

///

///

///

*Kaveny v. County of Sacramento et al.; Complaint*                                          1

## II. VENUE

2. Plaintiff's claims alleged herein arose in the Cities of Sacramento and Elk Grove, County of Sacramento, California. Therefore, venue lies in the Eastern District of California pursuant to 28 U.S.C. section 1391(b)(2).

## III. INTRODUCTION

3. This is a civil rights action brought by Plaintiff for violation of her 14th Amendment - Equal Protection Clause (discrimination based on gender) and Due Process rights, with pendent state law claims for defamation and related California civil rights violations.

4. Plaintiff is a duly licensed attorney at law in good standing with the California State Bar and, at all relevant times, was practicing as a criminal defense attorney. As such, to adequately represent her clients, Plaintiff must regularly meet with her in-custody clients and, when doing so share, review and examine papers, photographs, audio, video and other evidence related to their case. California courts have explicitly recognized this reality with regard to in-custody clients. Accordingly, attorney client meetings in jails typically take place in a room without any barrier between the attorney and client or, as is the case in the Sacramento County Jails, in a specially designed meeting room in which there is a glass partition with an opening permitting the attorney to share materials and evidence with the client. In the vernacular of the Sacramento County Jails the use of one of these meetings rooms is called a "pass-through" visit.

5. Beginning in November 2014 and continuing through July 2015, Defendants harassed and/or prevented Plaintiff from doing her job and conducting attorney-client interviews in the pass-through meeting room(s) at the Sacramento County Main and/or Rio Cosumnes Correctional Center (RCCC). Specifically, Defendants revoked Plaintiff's attorney-client pass-through meeting room rights without any process, good cause or, as discussed below, any evidence.

6. Defendants also disparaged Plaintiff's professionalism and accused her, without any evidence whatsoever, that she engaged in misconduct, including allegations of

*Kaveny v. County of Sacramento et al.;* Complaint 2

sexual misconduct with her clients.  It is clear, given the absence of any evidence of misconduct by Plaintiff, Defendants' allegations and conduct were the result of their bigoted and misogynistic beliefs that a woman spending time with her clients must be engaged in wrongdoing and sex, and not simply working hard to represent her clients.

7.   Defendants' false accusations forced Plaintiff to successfully seek judicial intervention so that she could effectively represent her clients, regain her attorney-client meeting rights and stop the harassment and defamation.  Two (2) hearings were held before a Sacramento Superior Court Judge to determine if there was any basis for Defendants to withhold from Plaintiff attorney-client meeting rights, which were afforded to every other attorney.

8.   In both hearings, and over Defendants' strenuous and strident objection, Sacramento Superior Court Judge Jaime R. Roman found there was absolutely no basis for Defendants' imagined allegations and, ultimately, Judge Roman ordered Defendants to reinstate Plaintiff all of the same attorney-client or pass-through meeting room rights permitted to and enjoyed by all other attorneys.

9.   As a result of Defendants' conduct, Plaintiff suffered irreparable harm to her reputation, lost business opportunities, endured significant emotional distress and anxiety and had to incur legal fees in order to be able to do her job.  Plaintiff seeks compensation for these losses, the violation of her civil rights, and any other remedy allowed by law including punitive damages, and attorney's fees and costs.

### IV.  PARTIES

10.   During all times mentioned in this Complaint, Plaintiff SAGE D. KAVENY is and was a, United States citizen.  Plaintiff resides in the County of El Dorado, California.

11.   Defendant COUNTY OF SACRAMENTO is a political subdivision of the State of California, created and existing by virtue of the laws of the State of California. Defendant COUNTY OF SACRAMENTO operates the Sacramento County Sheriff's Department.

12.   Defendant MATTHEW CHESTERMAN was, at all times mentioned in this Complaint, a Sacramento County Sheriff's Department Deputy (Badge #1040) employed by the COUNTY OF SACRAMENTO and acting in the course and scope of said employment relationship. Defendant MATTHEW CHESTERMAN was also acting under color of state law.

13.   Defendant BRIAN SHORTZ was, at all times mentioned in this Complaint, a Sacramento County Sheriff's Department Deputy (Badge #992) employed by the COUNTY OF SACRAMENTO and acting in the course and scope of said employment relationship. Defendant BRIAN SHORTZ was also acting under color of state law.

14.   Defendant BRANDON GAYMAN was, at all times mentioned in this Complaint, a Sacramento County Sheriff's Department Deputy (Badge #96) employed by the COUNTY OF SACRAMENTO and acting in the course and scope of said employment relationship. Defendant BRANDON GAYMAN was also acting under color of state law.

15.   Defendant SHELLY HODGKINS was, and at all times mentioned in this Complaint, a Sacramento County Sheriff's Department Deputy (Badge #176) employed by the COUNTY OF SACRAMENTO and acting in the course and scope of said employment relationship. Defendant SHELLY HODGKINS was also acting under color of state law.

16.   Defendant DOUGLAS DAVIS was, and at all times mentioned in this Complaint, a Sacramento County Sheriff's Department Deputy (Badge #1349) employed by the COUNTY OF SACRAMENTO and acting in the course and scope of said employment relationship. Defendant DOUGLAS DAVIS was also acting under color of state law.

17.   Defendant SACRAMENTO COUNTY MAIN JAIL COMMANDER THOMAS ANDRIS was, and at all relevant times mentioned in this Complaint, a Sacramento County Sheriff's Department Captain and Commander of the Sacramento County Main Jail employed by the COUNTY OF SACRAMENTO and acting in the course and scope of said employment relationship. Defendant THOMAS ANDRIS was also acting under color of state law.

18.    The true names and identities of Defendants Does I through X are presently unknown to Plaintiff.  Plaintiff alleges on information and belief that each of Defendants Does I through X were employed by the COUNTY OF SACRAMENTO during the time of these incidents.  Plaintiff alleges that each of the Defendants Does I through X were responsible for and caused the acts and injuries alleged herein in that Defendants Does I through X prevented Plaintiff from engaging in attorney-client visitations at the Sacramento County Main Jail or RCCC, and/or Defendants defamed or slandered Plaintiff and/or Defendants engaged in other conduct set forth in this Complaint which harmed Plaintiff.  Plaintiff will seek to amend this Complaint as soon as the true names and identities of Defendants Does I through X have been ascertained.

19.    The true names and identities of Defendants Does XI through XX are presently unknown to Plaintiff.  Plaintiff alleges on information and belief that each of Defendants Does XI through XX was employed by the COUNTY OF SACRAMENTO at the time of the conduct alleged herein.  Plaintiff alleges that each of Defendants Does XI through XX were responsible for the training and supervision of the deputies involved in this incident.  Plaintiff alleges that each of the Defendants Does XI through XX were responsible for and caused the acts and injuries alleged herein.  Plaintiff will seek to amend this Complaint as soon as the true names and identities of Defendants Does XI through XX have been ascertained.

20.    The true names and identities of Defendants Does XXI through XXV are presently unknown to Plaintiff.  Plaintiff alleges on information and belief that each of Defendants Does XXI through XXV was employed by the COUNTY OF SACRAMENTO at the time of the conduct alleged herein.  Plaintiff alleges that each of defendants Does XXI through XXV was responsible for the defacto policies/customs at issue in this case.  Plaintiff alleges that these policies were a cause of the acts and injuries alleged herein.  Plaintiff will seek to amend this Complaint as soon as the true names and identities of Does XXI through XXV have been ascertained.

21.    Each Defendant, to the extent that they engaged in any acts or omissions alleged herein, and unless otherwise indicated by this Complaint, engaged in such acts and/or omissions under color of state law and engaged in such acts as the agents of the other Defendants.

## V.  EXHAUSTION OF GOVERNMENT TORT CLAIM PROCEDURES

22.    Plaintiff filed a timely government tort claim with the COUNTY OF SACRAMENTO on or about February 26, 2015, regarding the incidents giving rise to this lawsuit, as a precondition to the state law claims alleged in this action.

23.    The COUNTY OF SACRAMENTO sent a letter on March 12, 2015, informing Plaintiff that the claim was received.    Because the COUNTY OF SACRAMENTO has yet to act on the tort claim, it is deemed rejected as a matter of law pursuant to Government Code section 910 et seq.

## VI.  FACTUAL ALLEGATIONS

24.    Plaintiff is a female criminal defense attorney who was admitted to the California State Bar in 2014 and is an attorney in good standing.

25.    Prior to attending law school and while working as a paralegal for an upscale Silicon Valley law firm, Plaintiff became involved in an Innocence Project case which had a successful conclusion.  That experience, as well as her experience from years of volunteer work with at-risk youth including several terms as the volunteer Program Director for the East Palo Alto Mural Art Project, caused Plaintiff to change her career trajectory and attend law school with the intention of pursuing a career in criminal defense.

26.    While studying the law, Plaintiff worked at the Federal Defender's Office and held other positions within her law school related to criminal defense, student outreach and assisting at-risk populations.  Plaintiff enjoyed a good reputation and had positioned herself to successfully pursue a career as a criminal defense attorney.

27.    After graduating from law school and passing the Bar, Plaintiff began her criminal defense career.  Plaintiff had several in-custody clients and as a result had to

engage in attorney-client visits or meetings with her clients at the Sacramento County Main Jail and/or RCCC pending determination of their innocence.

28. As noted above, such meetings are an integral part of Plaintiff's duties as an attorney and in the Sacramento County Jails occur in a pass-through meeting room(s) so that the attorney and client can review documents and evidence and effectively prepare a defense.

29. On or about November 7, 2014, while she was engaged in an attorney-client meeting, Defendant Deputy CHESTERMAN interrupted Plaintiff's confidential discussion.

30. Defendants claimed that Plaintiff engaged in misconduct during, including that she allegedly dropped her pants and removed her boots during the meeting.

31. This wild conclusion from Defendants was "based" on the purported review of video footage, which did not show any misconduct on the part of Plaintiff but did show that Plaintiff was off camera for a few minutes, unbeknownst to her, during part of her meeting. Apparently, for Defendants, if a female attorney is off-camera they must be engaging in sexual misconduct.

32. This absurd allegation unfortunately was only the beginning of Defendants' harassment, defamation and violation of Plaintiff's constitutional rights.

33. Plaintiff's November 7, 2014 attorney meeting with her client Anthony Blackowl was terminated and Plaintiff and was subsequently denied pass-through meeting room rights at RCCC and/or the Sacramento County Main Jail repeatedly between November 7, 2014 and July 2015. Indeed, Plaintiff's ability to meet with Blackowl, specifically, was improperly restricted on multiple occasions, including but not limited to, November 11, 2014, November 12, 2014, November 14, 2014, November 16, 2014, November 18, 2014, November 28, 2014, December 2, 2014, December 10, 2014, December 18, 2014, December 23, 2014, January 5, 2015, January 8, 2015, February 18, 2015, March 4, 2015, March 26, 2015 and April 1, 2015.

34. This interference was sufficiently significant that it necessitated the continuance of Blackowl's trial. Blackowl was ultimately acquitted of the charges brought against him, in a trial in which he was represented by Plaintiff.

35. In addition to Blackowl, Plaintiff's right to effectively meet with her clients were illegally restricted with at least six (6) other clients between February 1, 2015 and July 2015.

36. Plaintiff was denied such meeting room rights without any process, simply based on Defendants' speculative and fantasy fueled conclusions.

37. In addition to preventing Plaintiff from doing her job, Defendants also tried to prevent Plaintiff from getting any work by informing inmates, other attorneys and other correctional officers, that Plaintiff engaged in sexual misconduct with inmate clients. Additionally, Defendants harassed Plaintiff's clients and subjected them to unnecessary searches further undermining her representation of her clients.

38. Such instances of defamation include but are not limited to: (a) Shortly after stopping Plaintiff's confidential attorney-client meeting on November 7, 2014, Deputy CHESTERMAN authored a "report" in which he claimed that Plaintiff engaged in sexual misconduct. That report was uploaded in the Sheriff's Department computer system. Thereafter, Plaintiff and her remaining clients regularly heard disparaging comments about her at RCCC and/or the Sacramento Main Jail; (b) Based on information and belief, from November 7, 2014 through July 2015, Deputies GAYMAN, DAVIS, SHORTZ, and HODGKINS repeated in emails and conversations within the Sheriff's Department and at RCCC and/or the Sacramento Main Jail that Plaintiff engaged in sexual misconduct with her client on November 7, 2014 and/or that she had engaged in sexual misconduct with another inmate at El Dorado County Jail.

39. In an effort to restore her rights, to effectively practice law, and protect her clients' sixth amendment rights, Plaintiff sought the assistance of counsel and brought Motions before the Sacramento Superior Court raising objection to Defendants' conduct -

specifically their decision to revoke her pass-through meeting room rights without any due process.

40.     An initial hearing was held before Sacramento Superior Court Judge Jaime Roman.  At the conclusion of that hearing, on or about January 30, 2015, Judge Roman issued a ruling in which he noted there was no evidence of any misconduct by Plaintiff and that she was the victim of "rash and inappropriate treatment by overly zealous correctional officers.  She deserved better treatment.  And so did her client." (A copy of Judge Roman's January 30, 2015 ruling is attached and incorporated herein by reference as Exhibit 1) Judge Roman also ruled that Plaintiff's visitation rights should be reinstated.

41.     Despite this explicit Order, Defendants continued to deny Plaintiff attorney visitation rights undermining her ability to do her job and further eroding her reputation in the eyes of her clients, criminal defense attorney colleagues and district attorney adversaries.  For example, soon after Judge Roman's strongly worded Order, Plaintiff took a copy of the order and presented it at the Sacramento Main Jail so that she could visit with her client.  Defendant Deputy SHORTZ reviewed the Order and then laughed at Plaintiff and denied her the simple use of a pass-through meeting room, which is afforded to every other attorney in Sacramento.

42.     As noted above, Defendant then filed a government tort claim with the County of Sacramento, in part as an effort to put a stop to Defendants' unbelievable conduct.  The day after the tort claim was filed, Defendant Deputy GAYMAN emailed Plaintiff and told her that her pass-through meeting rights would continue to be revoked.

43.     Defendant Main Jail Commander THOMAS ANDRIS also told Plaintiff that *he* had issued an order that *superseded* the Court's January 30, 2015 Order thus continuing the denial of Plaintiff's rights.

44.     Given Defendants' flouting of Judge Roman's Order, Plaintiff was forced to seek judicial relief again through contempt proceedings and requests for injunctive relief against Defendants, who, as noted above, openly suggested that they were above the law and that the Court's Order did not apply to them.

45. On May 29, 2015, Judge Roman issued another Order. In that Order he again found that Plaintiff had not engaged in any wrongdoing and he strongly questioned Defendants' conduct, noting that Defendants' conduct violated due process: "To undertake a revocation of a privilege that specifically not only affects Ms. Kaveny's relationship with her client, but also casts a pale of suspicion as it relates to her and her client, and, of significant and further import, on her professional reputation, without any ostensible due process hearing or review following what appears to be a summary revocation...invites not only a potential for abuse by correctional supervisors...[but also] would appear to deny a fundamental right to due process." (A copy of Judge Roman's May 29, 2015 ruling is attached and incorporated herein by reference as Exhibit 2).

46. Judge Roman also ordered that Plaintiff's pass-through meeting room rights be restored by June 5, 2015 unless a proper due process hearing was held.

47. As with before, Defendants continued to deny Plaintiff pass-through attorney meetings with her clients after Judge Roman's Order.

48. Unwilling to risk the consequences of further thumbing their noses at Judge Roman's rulings, the Sheriff's Department finally provided an administrative hearing to Plaintiff on July 9, 2015 regarding the restrictions they imposed on meeting with in-custody clients. Plaintiff was represented, at the hearing, by attorney Stewart Katz.

49. Sacramento County Sheriff's Captain Michael Jones was the hearing officer. Not a scintilla of evidence was presented to justify Defendants' actions, which had been taken against Plaintiff.

50. Through a letter dated July 14, 2015, the Sacramento Superior Court and Plaintiff were informed that Plaintiff had prevailed at the hearing and that the restrictions placed upon her meeting with in-custody clients were finally lifted.

51. The conduct of Defendant Deputies set forth herein was ratified and approved by Defendants COUNTY OF SACRAMENTO, MAIN JAIL COMMANDER Captain THOMAS ANDRIS, and/or Does XI through XXV. Said Defendants also had a

custom and/or practice of failing to train and supervise Deputies in such a way to prevent them from engaging in the wrongdoing set forth in this Complaint.

## VII. CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### VIOLATION OF EQUAL PROTECTION CLAUSE
### (42 U.S.C. Section 1983 - DISCRIMINATION BASED ON GENDER)
*(Against All Individual Defendants)*

52.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 51, as though fully set forth herein.

53.    The actions of the individual Defendants, as alleged herein, including but not limited to the summary revocation of Plaintiff's meeting room rights needed to effectively represent her in-custody clients, the repeated insistence and repeated broadcast that Plaintiff engaged in sexual misconduct without any evidentiary support, and willful failure to abide by Court rulings was done because of Plaintiff's gender in violation of Plaintiff's rights as protected by the Fourteenth Amendment of the United States Constitution (Equal Protection Clause).

54.    As a direct and proximate result of said acts and/or omissions by the Defendants, Plaintiff suffered emotional distress and said acts were a proximate cause of Plaintiff's damages and injuries as alleged herein.

55.    The aforementioned acts and/or omissions of said Defendants were malicious, reckless and/or accomplished with a conscious disregard of Plaintiff's rights, thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

### SECOND CAUSE OF ACTION
Violation of Procedural Due Process
(42 U.S.C. Section 1983)
*(Against All Individual Defendants)*

56.    Plaintiff re-alleges and incorporates by reference paragraphs 1 through 55, as though fully set forth herein.

57.   The actions of the individual Defendants, as alleged herein, including but not limited to the summary revocation of Plaintiff's meeting room rights needed to effectively represent her in-custody clients, the repeated insistence and repeated broadcast that Plaintiff engaged in sexual misconduct without any evidentiary support, and willful failure to abide by Court rulings was done without any process in violation of Plaintiff's rights as protected by the Fourteenth Amendment of the United States Constitution (Procedural Due Process).

58.   As a direct and proximate result of said acts and/or omissions by the Defendants, Plaintiff suffered emotional distress and said acts were a proximate cause of Plaintiff's damages and injuries as alleged herein.

59.   The aforementioned acts and/or omissions of the individually named Defendants were willful, malicious, reckless and/or accomplished with a conscious disregard of Plaintiff's rights thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

## THIRD CAUSE OF ACTION
Entity Liability/ Unconstitutional Practices
(*Monell* claim: Actionable under 42 U.S.C. Section 1983)
(*Against Defendant County of Sacramento*)

60.   Plaintiff re-alleges and incorporates by reference paragraphs 1 through 59, as though fully set forth herein.

61.   The aforementioned acts of the COUNTY OF SACRAMENTO, including its ratification of the conduct alleged herein and systemic failure to train and discipline deputies with regard to gender discrimination and for claims related to Fourteenth Amendment violations, and permitting the conduct alleged herein, constitutes, in addition to ratification, a de facto policy, custom and/or practice.

62.   As a direct and proximate result of these aforementioned policies, customs, practices and/or procedures of said Defendants, Plaintiff suffered injuries and damages as alleged herein.

## FOURTH CAUSE OF ACTION
Violation of Unruh Act; Civil Code sections 51 and 52. – California State Law
*(Against all Defendants)*

63.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 62 as though fully set forth herein.

64.     The actions of the individual Defendants, as alleged herein, including but not limited to the summary revocation of Plaintiff's meeting room rights needed to effectively represent her in-custody clients, the repeated insistence and repeated broadcast that Plaintiff engaged in sexual misconduct without any evidentiary support, and willful failure to abide by Court rulings was done because of Plaintiff's gender and thus wrongly interfered with Plaintiff's entitlement to the full and equal accommodations, advantages, facilities, privileges, or services at the Sacramento County Main Jail and/or RCCC.

65.     Said conduct was a proximate cause of plaintiff's damages and injuries as alleged herein.

## FIFTH CAUSE OF ACTION
Negligence – California State Law
*(Against all Defendants)*

66.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 65 as though fully set forth herein.

67.     The actions of the individual Defendants, as alleged herein, including but not limited to the summary revocation of Plaintiff's meeting room rights needed to effectively represent her in-custody clients, the repeated insistence and repeated broadcast that Plaintiff engaged in sexual misconduct without any evidentiary support, and willful failure to abide by Court rulings constituted negligence under state law.

68.     Said conduct was a proximate cause of plaintiff's damages and injuries as alleged herein.

69.     Defendant COUNTY OF SACRAMENTO is vicariously liable for the conduct of its agents, and all individual Defendants named herein.

## SIXTH CAUSE OF ACTION
Defamation – California State Law
*(Against all Defendants)*

70.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 69 as though fully set forth herein.

71.     The conduct of Defendants, as alleged herein, including but not limited to the repeated broadcast that Plaintiff engaged in sexual misconduct without any evidentiary support constituted defamation under state law.

72.     Said conduct was a proximate cause of plaintiff's damages and injuries as alleged herein.

73.     Defendant COUNTY OF SACRAMENTO is vicariously liable for the conduct of its agents, and all individual Defendants named herein.

## SEVENTH CAUSE OF ACTION
Tortious Interference with Business Relations – California State Law
*(Against all Defendants)*

74.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 73 as though fully set forth herein.

75.     The actions of the individual Defendants, as alleged herein, including but not limited to the summary revocation of Plaintiff's meeting room rights needed to effectively represent her in-custody clients, the repeated insistence and repeated broadcast that Plaintiff engaged in sexual misconduct without any evidentiary support, and willful failure to abide by Court rulings constituted tortious interference with economic/business relations as set forth by state law.

76.     Said conduct was a proximate cause of plaintiff's damages and injuries as alleged herein and caused disruption to Plaintiff's business relations as set forth herein.

77.     Defendant COUNTY OF SACRAMENTO is vicariously liable for the conduct of its agents, and all individual Defendants named herein.

**EIGHTH CAUSE OF ACTION**
Supervisory Liability-Failure to Discipline/Investigate
(42 U.S.C. Section 1983)
*(Against Defendants Andris & Does XI - XX)*

78.     Plaintiff re-alleges and incorporates by reference paragraphs 1 through 77, as though fully set forth herein.

79.     The unlawful acts and omissions of Defendants CHESTERMAN, SHORTZ, GAYMAN and HODGKINS as set forth in this Complaint were the foreseeable result of their individual supervisors' failure to impose corrective action, discipline and/or remedial training.

80.     Defendants ANDRIS and DOES XI through XX knew and were deliberately indifferent to the fact that Defendants CHESTERMAN, SHORTZ, DAVIS, GAYMAN and HODGKINS would continue to engage in a repeating pattern of unlawful conduct as alleged herein.  Despite having this knowledge, Defendants ANDRIS and DOES XI-XX failed to take any corrective action, impose any discipline or provide Defendants CHESTERMAN, SHORTZ, DAVIS, GAYMAN and HODGKINS with any remedial training to prevent them from continuing this pattern of unlawful conduct.

81.     The aforementioned acts and/or omissions of said non-entity Defendants were willful, intentional, wanton, reckless and/or accomplished with a conscious disregard of Plaintiff's rights entitling Plaintiff to an award of exemplary and punitive damages.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1.  For compensatory, general and special damages against each Defendant, jointly and severally, in the amount proven at trial;

2.  For punitive and exemplary damages against each Defendant, as allowed by law, in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct;

3.  For costs and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988

*Kaveny v. County of Sacramento et al.;* Complaint                                               15

and as otherwise authorized by statute or law including California Civil Code section 52.1 et seq.

    4.  For such other relief, including injunctive and/or declaratory relief, as the Court may deem proper.

Dated: January 26, 2016                 Respectfully submitted,

                                    /s/ Stewart Katz
                                    STEWART KATZ,
                                    Attorney for Plaintiff

## DEMAND FOR TRIAL BY JURY

Plaintiff SAGE KAVENY hereby demands trial by jury.

Dated: January 26, 2016                 Respectfully submitted,

                                    /s/ Stewart Katz
                                    STEWART KATZ,
                                    Attorney for Plaintiff